40 Cal.App.4th 404 (1995)
46 Cal. Rptr.2d 862
THE PEOPLE, Plaintiff and Respondent,
v.
JESSE CHRIS APPLIN, Defendant and Appellant.
Docket No. F022260.
Court of Appeals of California, Fifth District.
November 17, 1995.
*406 COUNSEL
Eileen S. Kotler, under appointment by the Court of Appeal, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Joel Carey, Deputy Attorney General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
*407 OPINION
DIBIASO, Acting P.J.
Following denial of his suppression motion (Pen. Code,[1] § 1538.5), appellant Jesse Chris Applin pleaded guilty to possession of cocaine base (Health & Saf. Code, § 11350, subd. (a)) and admitted having suffered a prior felony conviction (§ 667, subds. (c)-(j)). He was sentenced to 32 months in prison, calculated as the lower term of 16 months doubled pursuant to section 667, subdivision (e). He obtained a certificate of probable cause (§ 1237.5) and has timely appealed.
In the published portion of this opinion, we will hold that section 667, subdivision (c)(5), a provision of the so-called "three strikes" law, does not violate principles of equal protection in its reduced award of conduct credits to recidivist offenders. In the unpublished portion of this opinion, we will hold that the trial court did not err when it denied appellant's motion to suppress evidence.

DISCUSSION

I. Motion to Suppress Evidence[*]
.... .... .... .... .... .... .... .

II. Section 667, Subdivision (c)(5)

Subdivisions (b) through (i) of section 667 comprise the three strikes law, which was enacted as an urgency measure and which became effective on March 7, 1994. (Stats. 1994, ch. 12, §§ 1-2.)[12] The Legislature articulated the purpose of the new law as follows: "It is the intent of the Legislature in enacting subdivisions (b) through (i), inclusive, to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (§ 667, subd. (b).)
Insofar as it is relevant to this appeal, section 667, subdivision (c) provides:
*408 "(c) Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions as defined in subdivision (d), the court shall adhere to each of the following:
".... .... .... .... .... .... ....
"(5) The total amount of credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not exceed one-fifth of the total term of imprisonment imposed and shall not accrue until the defendant is physically placed in the state prison."[13]
(1a) Appellant claims subdivision (c) of section 667 cannot be applied to him without violating his right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution. Specifically, appellant contends that in adopting the limitation on credits found in section 667, subdivision (c), the state has created a classification which will treat appellant differently from other similarly situated prisoners because (1) even if appellant's prison conduct is exemplary, he will be required to serve 25.6 months of his 32-month sentence; (2) had he committed a murder instead of possessing a small amount of cocaine base, he would have been able to earn credits in an amount up to one-third of his term pursuant to section 2931, subdivision (b); and (3) had he chosen to go to trial instead of pleading guilty, or had he otherwise spent a longer period of time in the county jail, he would have been able to earn credits in an amount of up to one-half of his term during the time he remained in the county jail pursuant to sections 2900.5 and 4019. According to appellant, the state cannot identify a compelling interest justifying this disparity in the awarding of credits.
(2) When legislation affects a fundamental interest or right, the equal protection clauses of the state and federal Constitutions require the state to demonstrate that the law is justified by a compelling interest and that the distinctions drawn by the law are necessary to further this interest. (People v. Olivas (1976) 17 Cal.3d 236, 251 [131 Cal. Rptr. 55, 551 P.2d 375].) In all other instances, strict scrutiny is not required; instead, the state need only show that there is a rational relationship between the classification established by the law and some legitimate state purpose. (Adams v. Superior Court (1974) 12 Cal.3d 55, 61 [115 Cal. Rptr. 247, 524 P.2d 375]; see Tobe v. City of Santa Ana (1995) 9 Cal.4th 1069, 1101 [40 Cal. Rptr.2d 402, 892 P.2d 1145].)
*409 Personal liberty is a fundamental right. (People v. Olivas, supra, 17 Cal.3d at p. 251.) Nevertheless, courts have reached different conclusions about which test applies to incongruities resulting from statutes involving time credits or other elements of criminal sentences.[14] (See, e.g., People v. Austin (1981) 30 Cal.3d 155, 166 [178 Cal. Rptr. 312, 636 P.2d 1] [compelling interest]; People v. Sage (1980) 26 Cal.3d 498, 508 & fn. 6 [165 Cal. Rptr. 280, 611 P.2d 874] [compelling interest]; In re Kapperman (1974) 11 Cal.3d 542, 544-546 [114 Cal. Rptr. 97, 522 P.2d 657] [rational relationship]; People v. Silva (1994) 27 Cal. App.4th 1160, 1168 [33 Cal. Rptr.2d 181] [rational relationship]; People v. King (1992) 3 Cal. App.4th 882, 885 [4 Cal. Rptr.2d 723] [rational relationship]; People v. Caruso (1984) 161 Cal. App.3d 13, 17-18 [207 Cal. Rptr. 221] [compelling interest]; People v. Jacobs (1984) 157 Cal. App.3d 797, 801 [204 Cal. Rptr. 234] [compelling interest].)
We need not add another citation to this list, because appellant is not similarly situated to either murderers or preconviction detainees. "[N]either the Fourteenth Amendment of the Constitution of the United States nor the California Constitution [citations] precludes classification by the Legislature or requires uniform operation of the law with respect to persons who are different.... `The concept of equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' [Citations.]" (In re Gary W. (1971) 5 Cal.3d 296, 303-304 [96 Cal. Rptr. 1, 486 P.2d 1201].) Thus, "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (In re Eric J. (1979) 25 Cal.3d 522, 530 [159 Cal. Rptr. 317, 601 P.2d 549], italics in original; cf. People v. Boulerice (1992) 5 Cal. App.4th 463, 472 [7 Cal. Rptr.2d 279] [state and federal equal protection clauses similarly analyzed].) "[B]efore the need arises to consider whether the statute satisfies a strict scrutiny standard of equal protection review, we must first determine whether defendant is `similarly situated' to all other felons whose offenses are not [subject to section 667, subdivision (c)(5)]. If he is not, his equal protection challenge to the statute must fail." (People v. Jacobs, supra, 157 Cal. App.3d at p. 801; see also People v. Jacobs (1992) 6 Cal. App.4th 101, 103-104 [7 Cal. Rptr.2d 781].)
(1b) Appellant reads subdivision (c)(5) of section 667 as applying to persons, such as himself, who have been previously convicted of a serious *410 felony (as defined in § 1192.7, subd. (c)) or a violent felony (as defined in § 667.5, subd. (c); see § 667, subd. (d)), and who have then committed any felony except murder. In appellant's view "second strike" murderers are treated less harshly than he will be because they are eligible for the more generous time credits afforded by section 2931, subdivision (b).
The literal language of section 667, subdivision (c)(5) refutes appellant's argument. This subdivision begins: "Notwithstanding any other law...." (Italics added.) It thus appears the Legislature explicitly wanted a recidivist felon with murder as a second strike to be subject to the limited time credits provision in the same manner as appellant will be.
Appellant relies on In re Diaz (1993) 13 Cal. App.4th 1755 [17 Cal. Rptr.2d 395] for the proposition that murderers are always sentenced under section 190, which, by its reference to section 2930 et seq., authorizes the reduction of a murderer's term by one-third for good behavior and work assignment participation. (See Diaz, supra, at p. 1759.) However, in the recent opinion of People v. Jenkins (1995) 10 Cal.4th 234 [40 Cal. Rptr.2d 903, 893 P.2d 1224], the California Supreme Court disapproved Diaz on this point and held that a convicted murderer who meets the requirements for sentencing as a habitual offender under section 667.7 must be sentenced pursuant to that statute and not under section 190. (Jenkins, supra, at pp. 238, 248 & fn. 8.)[15] The court also concluded that a murderer sentenced under section 667.7 cannot have his or her minimum period of imprisonment reduced by section 2933 credits. (Jenkins, supra, at p. 247.)
As Jenkins points out, the three strikes law does not supersede the habitual offender scheme of section 667.7, but the two measures are similar in several respects. (People v. Jenkins, supra, 10 Cal.4th at p. 238, fn. 2.) Given the broad language of the three strikes law, it is unlikely the Supreme Court would hold that a person convicted of murder as a second strike could only be sentenced under section 190. (See People v. Sipe (1995) 36 Cal. App.4th 468, 484 [42 Cal. Rptr.2d 266].)
Moreover, Diaz notwithstanding, a person who commits murder as a second strike is not similarly situated with a person, such as appellant, who commits some other felony. A defendant who has been convicted of one crime is not in the same position as a defendant who has been convicted of a different crime. (People v. Jacobs, supra, 157 Cal. App.3d at p. 803.) In *411 addition, appellant was sentenced under the determinate sentence law (DSL); murderers sentenced under section 190 receive an indeterminate term. Any credits appellant receives will reduce his sentence and automatically advance his date of release. This is not necessarily true with respect to murderers. (People v. Sipe, supra, 36 Cal. App.4th at p. 484.) The credits received by a murderer do not establish his or her actual parole date; they only operate to advance the parole eligibility date, the actual parole date being set independently by the Board of Prison Terms. (§§ 190, 3041; cf. In re Kapperman, supra, 11 Cal.3d at p. 547.) In this regard, "conduct credits have meaning only within the context of a fixed term." (People v. Austin, supra, 30 Cal.3d at p. 165.) Equal protection principles are not violated by affording those sentenced under the DSL different time credits than are afforded to those sentenced to indeterminate terms. (Cf. In re Monigold (1988) 205 Cal. App.3d 1224, 1227 [253 Cal. Rptr. 120].)
Appellant is also not comparable to persons who choose to go to trial instead of pleading guilty or who otherwise spend a longer time in the county jail awaiting trial or during trial. (3) Felons who have been convicted and sentenced to prison are not similarly situated to pretrial detainees, regardless of whether the latter are indigent and cannot post bail, are exercising their right to a jury trial, or both. (In re Cleaver (1984) 158 Cal. App.3d 770, 773 [204 Cal. Rptr. 835]; People v. Davis (1984) 154 Cal. App.3d 253, 254-255 [201 Cal. Rptr. 422].) "Pretrial felony detainees and state prison inmates are not similarly situated with respect to the purposes of the custody credit statutes. While state prison inmates are conclusively guilty and presumptively in need of rehabilitation, pretrial felony detainees are presumptively innocent and may not require rehabilitation. [Citations.] The difficulty of establishing prison-style work programs in county jails for pretrial detainees  who may make bail, or have work programs interrupted by court appearances and other obligations  further distinguishes pretrial detainees from state prisoners...." (People v. Heard (1993) 18 Cal. App.4th 1025, 1030 [22 Cal. Rptr.2d 684].)
(1c) In short, appellant is similarly situated only to those persons who are recidivist felony offenders sentenced under the DSL and the three strikes law. (See People v. Jacobs, supra, 6 Cal. App.4th at p. 104 [for purposes of § 4019, pretrial detainee is similarly situated only to other detainees who have served same number of days in presentence confinement].) Because section 667, subdivision (c)(5) treats all such persons the same, appellant has not been denied equal protection. (See People v. McCarthy (1986) 176 Cal. App.3d 593, 596 [222 Cal. Rptr. 291] [no equal protection violation where § 667.5, subds. (b) & (f) enhance sentence for foreign conviction if defendant served one year or more in prison without imposing similar time *412 restriction on California prior, where all persons who committed felony in California treated the same].) "[L]ong-settled principles allow the Legislature to limit the application of laws to a uniform class of persons such as previously convicted felons." (People v. Mills (1992) 6 Cal. App.4th 1278, 1287 [8 Cal. Rptr.2d 310]; see People v. Jacobs, supra, 157 Cal. App.3d at p. 802; Kendrick v. United States (D.C. Cir.1956) 238 F.2d 34, 37 [99 App.D.C. 173].) This is precisely what the Legislature has done by enacting subdivision (c)(5) of section 667.

DISPOSITION
The judgment is affirmed.
Thaxter, J., and Harris, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.
[1] All statutory references are to the Penal Code unless otherwise stated.
[*] See footnote, ante, page 404.
[12] The following November, voters passed a "three strikes" initiative measure (Prop. 184) which added section 1170.12 to the Penal Code. Section 1170.12 is substantially similar to subdivisions (c) through (g) of section 667. As appellant committed the instant offense on May 28, 1994, this case arises under section 667, although we recognize that the time credit provisions of each statute are virtually identical. (Compare § 667, subd. (c)(5) with § 1170.12, subd. (a)(5).)
[13] Appellant implicitly concedes that his July 1, 1988, robbery conviction constitutes a "prior felony conviction[] as defined in subdivision (d)" of section 667.
[14] Our use of the term "time credits" encompasses the various sentence reductions an inmate may achieve through good behavior, participation in work programs, and the like. (See, e.g., §§ 2930 et seq., 4019.)
[15] The Supreme Court agreed with Diaz to the extent Diaz reasoned that an interpretation of section 667.7 which operated to punish recidivist murderers more leniently than nonrecidivist murderers would be contrary to the Legislature's intent and would lack a rational justification. (People v. Jenkins, supra, 10 Cal.4th at p. 246.)